IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

| | | |
|---|---|---|
| **TRACI SWANIER** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § CIVIL ACTION NO. 2:05CV2071-LG-JMR | |
| | § | |
| | § | |
| **HOME DEPOT U.S.A. INC.** | § | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**BEFORE THE COURT** are the Motion for Summary Judgment [76] and the Motion to Strike Exhibits Submitted with Plaintiff's Opposition to the Motion for Summary Judgment [104] filed by Defendant, Home Depot U.S.A., Inc.  Upon reviewing the submissions of the parties and the relevant law, the Court finds that Defendant's Motion for Summary Judgment should be granted in part and denied in part, and Defendant's Motion to Strike Exhibits should be denied.

**FACTS**

In June of 2002, Plaintiff, Traci Swanier, transferred from the Jackson, Mississippi, Home Depot store to the new Hattiesburg, Mississippi, Home Depot store, and was given the position of Install Expediter.  Part of Plaintiff's job responsibilities included placing signs regarding the availability of installation throughout the store.  Plaintiff received multiple disciplinary notices for improper or missing signs.  Plaintiff was also disciplined for failing to follow-up on and handle problems with installations.  However, Plaintiff contends in an affidavit that there were never truly any problems with her placement of signs, and that some of the signs may have been stolen.  In October of 2004, Plaintiff was transferred to the flooring department,

as a result of the repeated problems with sign placement. Plaintiff admitted at her deposition that her pay was not reduced and that her hours were not reduced. (Ex. A to. Def.'s Mot. at 88-90). However, she asserted that the flooring department position was "underneath" her prior position, and her schedule changed. (Ex. A to. Def.'s Mot. at 89-90).

Plaintiff has submitted evidence that the store manager, George Garza, had informed the management staff that Plaintiff was a "worthless nigger he wanted gone" not long before she was forced to resign. (Ex. 36 to Pl.'s Resp. at 82-83).[1] Subsequent to the transfer to the flooring department, Plaintiff met with the Human Resources Manager, Greg Luckett, in order to ask for assistance on behalf of her friend, Jamesia[2], who also worked in the store. (Ex. A to Def.'s Mot. at 97). Plaintiff's other friend, Tamala Patrick, claims that Plaintiff called her on her cell phone so that Patrick could listen to the conversation between Luckett and Plaintiff.[3] (Ex. G to Def.'s Mot. at 58-59). However, Plaintiff denies that she allowed Patrick to listen to the conversation. (Ex. A to Def.'s Mot. at 94). As a result of Plaintiff's alleged conduct, she was called into the manager's office and was informed that she would be terminated. (Ex. A to Def.'s Mot. at 122-24). However, she was allowed to resign in order to avoid termination. (Ex. A to Def.'s Mot. at 132). Plaintiff claims that Luckett and the store's manager held her in a room for four hours while they attempted to force her to resign. (Ex. A to Def.'s Mot. at 127-32). Plaintiff has

---

[1] This lawsuit is a companion case to six other racial discrimination claims filed against Defendant, and all of the seven plaintiffs are represented by the same counsel. Counsel for Plaintiff mistakenly asserted that the "worthless nigger he wanted gone" comment was made regarding another plaintiff, Missy Viverette. However, deposition testimony of Mark Vizy, department manager, reveals that the statement was allegedly made regarding Plaintiff, not Viverette.

[2] Plaintiff testified that she could not remember Jamesia's last name.

[3] Patrick and Luckett are two of the other plaintiffs who have sued Defendant, asserting race discrimination.

admitted that she did leave the room in order to assist a customer, and that she returned to the room after helping the customer. (Ex. A to Def.'s Mot. at 131). Plaintiff filed this lawsuit against Defendant on September 27, 2005, alleging claims of racial discrimination, gender discrimination, hostile work environment, retaliation, false imprisonment, and intentional infliction of emotional distress.

DISCUSSION

**EXHAUSTION OF REMEDIES**

Defendant argues that Plaintiff did not exhaust her administrative remedies with regard to her Title VII gender discrimination claim and her Title VII hostile work environment claim because she did not allege gender discrimination or hostile work environment in her EEOC charge. (Ct. Rec. at 78-3, pp. 2-4). The scope of a judicial complaint under Title VII is limited to the scope of the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). Plaintiff's hostile work environment claim and her gender discrimination claim cannot reasonably be expected to grow out of her EEOC charge that she was discriminated against because of her race. Therefore, Plaintiff failed to exhaust her administrative remedies with regard to her Title VII hostile work environment and gender discrimination claims. However, Plaintiff also asserts claims of hostile work environment and gender discrimination pursuant to 42 U.S.C. §1981, and those claims are not subject to the same exhaustion requirements. *See Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)(overruled on other grounds). Therefore, the Court will discuss those claims in more detail below.

**RACE AND GENDER DISCRIMINATION CONCERNING RESIGNATION UNDER THREAT OF TERMINATION**

In support of her race discrimination claim, Plaintiff has produced the deposition testimony of Mark Vizy, a department manager. Vizy testified that George Garza, the store manager, said that Plaintiff was a "worthless nigger he wanted gone." (Ex. 36 to Pl.'s Resp. at 82-83). Vizy also testified that Plaintiff no longer worked for the company a short time after that statement was made. (Ex. 36 to Pl.'s Resp. at 82-83). Plaintiff asserts that she was forced to resign under threat of termination after being held in a room for four hours by Garza and Luckett. Defendant asserts that Plaintiff was being disciplined for transmitting a conversation with Luckett to another store employee without Luckett's consent or knowledge. Plaintiff asserts that Garza told her she was worthless during the four hour meeting and that her transmission or recording of the conversation with Luckett "took the cake." (Ex. 36 to Pl.'s Resp. at 124, 127). Plaintiff asserts that she was terminated because of her race.

Therefore, the Court must determine whether Vizy's testimony constitutes direct evidence of discrimination. In order for evidence to be "direct," it must, if believed, prove the fact in question without inference or presumption." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003). "[D]irect evidence includes any statement or document which shows on its face that an improper criterion served as a basis– not necessarily the sole basis, but a basis – for the adverse employment action." *Fabela*, 329 F.3d at 415. Once the plaintiff has submitted evidence that retaliation was among the motives that prompted the adverse action, the "burden of proof shifts to the employer to establish by preponderance of evidence that the same decision would have been made regardless of the forbidden factor." *Id.* (quoting *Moore v. U.S. Dep't of*

*Agric.*, 55 F.3d 991, 995 (5th Cir. 1995)).

Garza testified at his deposition that he had never called anyone a "nigger" while he was manager of the Hattiesburg store. (Ex. E to Def.'s Mot. at 168). Therefore, the Court finds that a genuine issue of material fact exists regarding whether Garza made the derogatory statement concerning Plaintiff. However, if Garza did make that statement, the Court finds that the statement is direct evidence of discrimination because in the alleged statement a racist term is used to describe Plaintiff and an adverse employment action is discussed in the statement. The finding that the statement is direct evidence of discrimination is strengthened by Plaintiff's claim that Garza again reiterated that she was "worthless" during the four hour meeting that led to her resignation under threat of termination. Additionally, Vizy testified that Plaintiff left her employment a short time after the statement was allegedly made. (Ex. 36 to Pl.'s Resp. at 82-83). In light of this direct evidence of discrimination, the burden shifts to Defendant to demonstrate by a preponderance of the evidence that Plaintiff would have been forced to resign regardless of her race. Defendant asserts that Plaintiff was asked to resign under threat of termination because she had transmitted a conversation between herself and Luckett to a fellow employee. However, Defendant has not demonstrated by a preponderance of the evidence that Plaintiff would have been terminated regardless of her race. Therefore, Defendant is not entitled to summary judgment regarding Plaintiff's race discrimination claim concerning her termination.

As for her gender discrimination claim, Plaintiff has not set forth any direct evidence of gender discrimination. In order to set forth a prima facie case of employment discrimination, a plaintiff must demonstrate (1) that she belongs to a protected class; (2) that she was qualified for the position; (3) that she suffered an adverse employment decision; and (4) that she was replaced

by someone outside the protected class, or in the case of disparate treatment, that similarly situated persons outside her protected class were treated more favorably under circumstances that were "nearly identical" to hers. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001). Plaintiff has not produced any evidence that she was replaced by a male employee after she resigned. Additionally, she has not pointed to any similarly situated male that was treated more favorably under circumstances that were nearly identical to hers. Therefore, Plaintiff has not set forth a prima facie case of gender discrimination concerning her resignation under threat of termination.

**TRANSFER TO FLOORING DEPARTMENT**

As for the transfer of Plaintiff from the position of Install Expediter to a position in the flooring department, Plaintiff has not submitted direct evidence of discrimination. Therefore, the Court must determine if Plaintiff has set forth a prima facie case of discrimination pursuant to the *McDonnell Douglas* test. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In order to set forth a prima facie case of employment discrimination, a plaintiff must demonstrate (1) that she belongs to a protected class; (2) that she was qualified for the position; (3) that she suffered an adverse employment decision; and (4) that she was replaced by someone outside the protected class, or in the case of disparate treatment, that similarly situated persons outside her protected class were treated more favorably under circumstances that were "nearly identical" to hers. *Okoye*, 245 F.3d at 513. She asserts in an affidavit that she was replaced by a Caucasian female. However, she has not demonstrated that the transfer was an adverse employment decision, because she has admitted that her pay was not reduced and that her hours were not reduced. (Ex. A to Def.'s Mot. at 88-90). Therefore, Plaintiff has not set forth a prima facie

case of either race or gender discrimination concerning her transfer to the flooring department or her resignation under threat of termination.

**RETALIATION**

In order to establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in activity protected by Title VII; (2) that adverse employment action was taken against her; and (3) there is a causal link between the protected activity and the adverse employment action. *See Harvill v. Westward Commc'ns*, 433 F.3d 428, 439 (5th Cir. 2005). Plaintiff has not made any attempt to set forth a prima facie case of retaliation in response to Defendant's Motion for Summary Judgment and has not asserted that adverse action was taken against her as a result of protected Title VII activity. Therefore, Defendant is entitled to summary judgment as to Plaintiff's retaliation claim.

**HOSTILE WORK ENVIRONMENT**

To state a hostile work environment claim, under Title VII, a plaintiff must show that: (1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action. *Equal Employment Opportunity Comm'n v. WC&M Enter., Inc.*, 496 F.3d 393 (5th Cir. 2007). For harassment to be sufficiently severe and pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive. *Id.* "Although 'discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive' to support evidence of a Title VII violation, 'simple teasing, offhand comments, and isolated

incidents, (unless extremely serious) will not amount to discriminatory charges' that can survive summary judgment." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347-48 (5th Cir. 2007) (quoting *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995); *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004)). In *Turner*, the Fifth Circuit held that a supervisor's repeated reference to inner-city children as "ghetto children," along with comments that African-American students attended evening classes because they could not qualify for regular college admission, and expressions of surprise and disdain that the plaintiff drove a Volvo and shopped at an upscale shopping center, were insufficient for a reasonable jury to find that a hostile work environment existed. *Turner*, 476 F.3d at 348.

At her deposition, Plaintiff testified that the store's manager made the following types of statements that she understood to be racist: he frequently referred to black employees as "y'all;" he once said "y'all are just like a bunch of monkeys" when he saw several black employees talking in a group; he told her that "only black people have big rear ends;" and he asked her how a single mother could afford the 2003 Nissan Maxima that she drove. (Ex. A to Def.'s Mot. at 19-20, 91). When viewed objectively, only two of the alleged comments– the comment concerning monkeys and the comment concerning body structure– were potentially racially motivated. As in *Turner*, these alleged comments were isolated incidents, and Plaintiff has not introduced evidence sufficient for a reasonable jury to find that a hostile work environment existed. *See Turner*, 476 F.3d at 348. Therefore, the Court finds that Defendant is entitled to summary judgment regarding Plaintiff's hostile work environment claim.

**FALSE IMPRISONMENT**

In order to demonstrate false imprisonment, a plaintiff must show that there was an unlawful detention. *Blake v. Wilson*, 962 So. 2d 705, 714 (Miss. Ct. App. 2007). Plaintiff asserts that she was held in a room with the human resources manager and the store's manager for four hours after it was discovered that she had allegedly allowed a friend to listen to her conversation with the human resources manager. (Ex. A to Def.'s Mot. at 129). During this meeting she was told that she would be terminated if she did not resign her position at the store. In her deposition, Plaintiff admitted that she never tried to leave the room. She also admitted that she did in fact leave the room in order to assist a customer, and then returned to the room after she had finished helping the customer. (Ex. A to Def.'s Mot. at 130-31). However, the former human resources manager, Greg Luckett, described the time that Plaintiff was kept in the room in an affidavit:

> 18. Mr. Garza was interrogating Tracy [sic]. It felt like something a Gestapo would do. He drilled her over and over, repeating the same question again and again. It was like something you would see on television. Traci left the room to go to the bathroom. Mr. Garza told me to go stand by the bathroom while she was in there. I stood in the hall outside the bathroom and waited. Mr. Garza left the room after we got back and told me to keep her there. I kept Tracy [sic] in the room for over 45 minutes while Mr. Garza went somewhere. When he came back he started drilling her again. This went on all afternoon, lasting at least four hours.
>
> 19. Mr. Garza wanted Tracy [sic] to resign. He would not let her leave until she resigned. He told me that she could not leave until she resigned. Mr. Garza never indicated to me that he had a legal basis to fire Tracy [sic]. Mr. Garza kept Tracy [sic] in my office with the blinds drawn on the window and with his foot on the chair next to Tracy [sic]. His posture was very intimidating and improper. After several hours Tracy [sic] broke down and began crying and said she would resign.

(Ex. 22 to Pl.'s Mem. at ¶¶18-19). The Court finds that Luckett's description of the meeting

creates a genuine issue of material fact regarding whether the meeting constitutes an unlawful detention.[4] Therefore, Defendant's Motion for Summary Judgment is denied as to Plaintiff's false imprisonment claim.

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Mississippi courts recognize intentional infliction of emotional distress claims when the defendant's conduct evokes outrage or revulsion. *Jones v. Fluor Daniel Serv. Corp.,* 959 So.2d 1044 (Miss. 2007). "Liability has only been found where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *White v. Walker*, 950 F.2d 972, 978 (5th Cir. 1991) (quoting RESTATEMENT (SECOND) OF TORTS § 46 comt. d).

In support of her emotional distress claim, Plaintiff primarily relies on the affidavit of former human resources manager, Greg Luckett, which is quoted at length above. Luckett asserts that Garza held Plaintiff in a room for four hours, while he interrogated her and threatened her with termination. Luckett contends that Garza kept his foot on Plaintiff's chair, maintaining an improper and intimidating posture. As a result, the Court finds that a genuine issue of material fact exists regarding whether Garza's conduct rose to the level of indecency necessary to constitute intentional infliction of emotional distress. Thus, Defendant is not entitled to summary judgment regarding Plaintiff's intentional infliction of emotional distress claim.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary

---

[4] Defendant asserts in its Motion to Strike [104] that the Affidavit of Greg Luckett should be stricken because Luckett's opinions are contained in Paragraphs 18 and 19 of the Affidavit. However, the Court finds that Luckett's opinions are admissible in that they are rationally based on his perception, are helpful to the Court, and are not scientific or technical in nature. *See* FED. R. EVID.701. Therefore, Defendant's Motion to Strike is denied.

Judgment [76] filed by Defendant, Home Depot U.S.A., Inc. is **GRANTED** as to Plaintiff's discrimination claim concerning her transfer to another position, her retaliation claim, and her hostile work environment claim.  Defendant's Motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Motion to Strike Exhibits Submitted with Plaintiff's Opposition to the Motion for Summary Judgment [104] filed by Defendant, Home Depot U.S.A., Inc. is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 5th day of December, 2007.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE